ington, 15 Johns. 298; Champlin v. Butler, 18 Johns. 169, are disposed of by the single remark, that the sole question was, whether the party in possession, as owner, ordering repairs, or engaging mariners, was liable for compensation, or the mere registered owner, who had neither expressly nor impliedly made the contract, or authorized the expense. Upon the plainest principles of justice, the former was held exclusively liable. The case of Murgatrod v. Crawford, 3 Dall. [3 U. S.] 491, cannot be deemed an authority, for it was overruled in Duncanson v. McLure, 4 Dall. [4 U. S.] 308. The case of U. S. v. Willing, 4 Cranch [8 U. S.] 48, turned upon the construction of a statute of the United States; and no point was made as to the sufficiency of what is called the parol sale in that case, to transfer the title of part of a ship while at sea. Without a more clear and decisive course of authority to the contrary, I confess myself unwilling to desert the opinion held by Lord Stowell, and recognized at the trial, that a written document is the proper and necessary evidence of the title of transfer of a ship which navigates the ocean. But the present case does not turn upon that point. For here there was a written transfer, and the attempt is to set up a parol title to control the written documents. I think such evidence inadmissible. In Carroll v. Boston Mar. Ins. Co., 8 Mass. 515, the court rejected proof of title of ownership, inconsistent with the ship's papers and bill of sale. The court said, "every document proves an absolute transfer; and these documents must be conclusive in establishing the property of the vessel between the parties." A doctrine somewhat analogous was held by the court in Robinson v. M'Donnell, 2 Barn. & Ald. 134. My own opinion is, that it stands upon a principle commended by the soundest policy and justice.

I agree, that an equitable interest is an insurable interest. Whether it binds the underwriter to answer for any loss, when its peculiar nature is not disclosed, and the terms of the insurance are strictly applicable to legal interests; and whether there would be any difference in such case, if the disclosure were not material to the risk, are questions upon which I give no opinion. I am not unaware of the bearing of some of the cases cited at the bar on these points (13 Mass. 61; Id. 267; 3 Mass. 133; 1 Johns. 385); but I shall be scrupulous in avoiding any decision on them, until they constitute the very point in judgment. Whatever may be the general rule on this subject, in ordinary cases, I am of opinion, that an insurance on a ship is to be deemed, unless a special explanation is given, to be an insurance on the legal interest, and not on a mere equitable interest, as contradistinguished from the legal interest of the ship; and at all events not an insurance upon a mere private, verbal trust, in opposition to the ship's papers and the overt acts of the parties.

If such an interest is to be insured, it ought to be disclosed. The nature of such a title must ordinarily be material to the risk: and if by possibility it be not so, still it cannot be fairly presumed to be within the intention of the underwriter upon the common terms of a policy on a ship. In the absence of all explanation I think those terms must be understood to apply to a legal interest, and not to a mere parol trust or equity. I confess myself also to be strongly of opinion, that there is, in every case of this nature, an implied representation, that the ship's papers are according to the real legal ownership. No one has a right to say, that the true character of the ship and the representation of the genuine interest of the parties to the insurance are not, or may not be, material to the underwriter in estimating his risk. No one has a right to suppose, that in case of loss the underwriter is to be responsible, not according to the legal import of the ship's papers, but to verbal engagements and parol trusts, which are susceptible of being shaped according to events. In what manner could the underwriters, in this very case, assert an exclusive ownership upon an abandonment against Remington? The effect of the acts of the master, being a part owner, might be very important in the consideration, not only of questions of peril and revenue, but of the general conduct of the voyage. If the underwriter is not put upon any inquiries of this nature by any disclosure of a special interest or special ownership, he has a right to suppose, that the parties deal with him upon the naked avowal of legal titles.

My judgment accordingly is, that there is no ground for a new trial; that the legal title in the ship is not, and cannot be, varied by any parol evidence; and that the plaintiff must be deemed the owner of a moiety of the ship only, there being no document, contract, or writing, which in any shape controls the ordinary presumption of ownership, arising upon the bill of sale. Motion overruled.

---

OKELEY (BANK OF COLUMBIA v.). See Case No. 877.

---

## Case No. 10,474.

### In re O'KELL.

[2 Ben. 144; 1 N. B. R. 303 (Quarto, 52); 1 Am. Law T. Rep. Bankr. 32; 3 Pittsb. Leg. J. (N. S.) 232.] [1]

District Court, S. D. New York. Feb., 1868.

#### WITNESS' FEES.

A bankrupt is bound to appear and submit to an examination, when ordered, without being paid witness' fees.

[In the matter of William O'Kell, a bankrupt.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 1 Am. Law T. Rep. Bankr. 32, contains only a partial report.]

By ODLE CLOSE, Register:

2 [On the 18th day of January, 1868, upon the application of Charles Walke, a creditor of the above named bankrupt, I issued an order for the examination of said bankrupt, returnable at my office at White Plains, New York, on the 5th day of February, 1868, at ten a., m. On the return day of said order, Mr. Conable appeared as attorney for said creditor, and Mr. Taggart as attorney for said bankrupt. Mr. Taggart, in behalf of said bankrupt, insisted that said bankrupt was entitled to his fees as a witness. Mr. Conable, on the other hand, insisted that he was bound to appear and submit to an examination, pursuant to the order, and was not entitled to any fees. The undersigned decided that said bankrupt was bound to appear and submit to such examination pursuant to said order, without fees. Whereupon, at the request of the counsel for said bankrupt that the same should be certified to the judge for his opinion thereon, the question is submitted as to whether said bankrupt, who is required by an order of the court to appear before the register and submit to an examination, is entitled, before being examined, to be paid witness' fees. The undersigned is of opinion that said bankrupt is not entitled to such fees. Section 26 of the bankrupt act [of 1867 (14 Stat. 529)] provides, "that the court may, on the application of the assignee in bankruptcy, or of any creditor, or without any application, at all times require the bankrupt, upon reasonable notice, to attend and submit to an examination on oath," &c. I find no provision in the act allowing the bankrupt fees as a witness in such cases. He may be required to submit to an examination without the application of a creditor; in such case it is difficult to see from whom he could obtain fees as a witness. The bankrupt applies to the court to be discharged from all his liabilities, and it would seem to the undersigned but reasonable that he should attend at the instance of a creditor whose debt is to be swept away by the discharge, and submit to an examination as to his property. All of which is respectfully submitted.] 2

BLATCHFORD, District Judge. The register was correct in his decision.

[Subsequently the bankrupt was granted a discharge. See Case No. 10,475.]

---

## Case No. 10,475.

### In re O'KELL.

[2 N. B. R. 105 (Quarto, 35).] 1

District Court, S. D. New York. 1868.

BANKRUPTCY — SPECIFICATIONS IN OPPOSITION TO DISCHARGE—BURDEN OF PROOF.

Where specifications are filed in opposition to the discharge of a bankrupt, the burden of proof

2 [From 1 N. B. R. 303 (Quarto, 52).]
1 [Reprinted by permission.]

is on the creditor, and when he fails to show just cause for refusing a discharge, it must be granted.

[In the matter of William O'Kell, a bankrupt. See Case No. 10,474.]

S. C. Conable, for creditor.
W. H. Taggart, for bankrupt.

BLATCHFORD, District Judge. I have carefully examined the testimony in this case in connection with the eight specifications filed on the part of Charles Walke, a creditor, in opposition to the discharge of the bankrupt, and am not satisfied that any one of the specifications is sustained by the proofs. The burden of proof is on the creditor, and although the character of the evidence is such as to show that the creditor was justified in examining closely into the transactions of the bankrupt, and in opposing his discharge, and there are many things disclosed by the testimony that are quite discreditable to the bankrupt, I cannot say that anything is shown that will warrant the withholding of a discharge. A discharge is therefore granted.

---

## Case No. 10,476.

### OKELY v. BOYD.

[2 Cranch, C. C. 176.] 1

Circuit Court, District of Columbia. June Term, 1819.

EXECUTION WITHOUT JUDGMENT — BANK CHARTER —WHAT MUST BE SHOWN.

An execution issued by order of the president of the Bank of Columbia, without any previous judgment, under the 14th section of the Maryland act of 1793 (chapter 30) entitled "An act to establish a bank in the District of Columbia," must show upon its face all the facts necessary to justify the clerk in issuing it.

This was an action of replevin against the marshal of the District of Columbia, to replevy the plaintiff's goods taken in execution upon two writs of fieri facias issued by the clerk of this court on the 19th of June, 1816 (Nos. 7 and 8 on the judicial docket of December term, 1816), one for $1,000, and the other for $900, upon the order of the president of the Bank of Columbia, in virtue of the authority vested in him by the 14th section of Act Md. 1793, c. 30, entitled "An act to establish a bank in the District of Columbia." by which it was enacted, "that whenever any person or persons are indebted to the said bank for moneys borrowed by them, or for bonds, bills or notes given or indorsed by them, with an express consent in writing that they may be made negotiable at the said bank, and shall refuse or neglect to make payment at the time the same become due, the president shall cause a demand in writing on

1 [Reported by Hon. William Cranch, Chief Judge.]